## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SARAH COLEMAN, a/k/a
SALLY COLEMAN,
     Plaintiff,

          v.

DAVID CERSKI and ASHLEY
BOROUGH,

     Defendants.

CIVIL ACTION No. 3:04-cv-1423

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Defendants David Cerski and Ashley Borough's Motion for Summary Judgment (Doc. 29) and Motion to Strike Plaintiff's Affidavits (Doc. 40). Because some of the statements in Plaintiff's affidavits that Defendants challenge are speculative and conclusory but other challenged statements do comply with Federal Rule of Civil Procedure 56(e), Defendants' motion to strike will be granted in part and denied in part. Because even viewing the record in the light most favorable to Plaintiff, she was not seized; the substantive component of the Due Process Clause of the Fourteenth Amendment is not the appropriate avenue through which to pursue Plaintiff's claim for unreasonable force; genuine issues of material fact exist regarding the claim that Defendant Cerski retaliated against Plaintiff for exercise of her First Amendment rights; Plaintiff has proffered insufficient evidence for a reasonable jury to conclude that Ashley Borough acted with deliberate indifference to her constitutional rights; and the Court retains jurisdiction over Plaintiff's state law claims, Defendants' motion for summary judgment will be granted in part and denied in part.

**BACKGROUND**

Plaintiff Sarah Coleman is a member of the Ashley Fire Police, a volunteer organization that assists the fire department in part by directing traffic and blocking streets.  (Dep. of Sarah Coleman, Aug. 3, 2006 & Dec. 13, 2006, Defs.' Ex. 2, Doc. 31-2, at 17: 21-22, 26:22-25, 27: 1-7.)  Defendant David Cerski has been the chief of the Ashley Police Department since 2001, and an officer with the department since 1986. (Dep. of David Cerski, May 9, 2006, Defs.' Ex. 1, Doc. 31-1, at 3: 18-23, 4: 1-8; Dep. of Mayor Richard Oravic, May 25, 2006, Pl.'s Ex. D, Doc. 37-5, at 39: 14-15.)  On August 11, 2003, Plaintiff responded to a house fire in Ashley, and at the direction of her fire chief, Joseph McGlynn, she blocked the intersection of Main and Hazelton Streets. (Coleman Dep. at 101: 6-12, 102: 2-21.)  Defendant Cerski later arrived at the scene and directed Plaintiff to open the intersection, but Plaintiff told Chief Cerski that she would not open the street until Fire Chief McGlynn directed her to do so.  (*Id.* at 106: 9-21.)

The subsequent events of that day are disputed.  The record, viewed in the light most favorable to the nonmoving party, Plaintiff, shows that Defendant Cerski directed Plaintiff to open the street, and when she responded that she could not, he held his badge up eight (8) to ten (10) inches from her face and said "you know what this badge is? ... it's my gold badge.  I'm the chief," and when she repeated that she would not open the street until her fire chief told her to do so, Cerski responded "we'll see about that." (*Id.* at 106: 9-21, 117: 4-18.)  Plaintiff also stated that her refusal "enraged Cerski, who had a fit at the scene."  (Pl.'s Aff., Pl.'s Ex. E, Doc. 37-6 ¶ 4.)  Defendant Cerski denies this account except that he admits he told Plaintiff, along with two other fire police

2

members, that they could open the road.  (Cerski Dep. at 34: 20-25, 35: 1-23.)

It is undisputed that on September 14, 2003, the Ashley Police, Ashley Fire Department, and Ashley Fire Police all responded to an accident involving an automobile and a motorcycle in which the driver of the motorcycle was killed.  (Dep. of James Domyan, Sept. 8, 2006, Defs.' Ex. 7, at 7: 6-8, 8: 6-7, 9: 7-24, 12: 23-25, 13: 1-18; Dep. of Joseph McGlynn, May 25, 2006, Defs.' Ex. 8, at 9: 24-25, 10: 1-2.)  Debris from the accident, and the decedent's body, remained on the road, and Defendant Cerski was next to the automobile when Plaintiff, also responding to the accident, approached Defendant Cerski to ask him a question.  (Cerski Dep. at 23: 23-25, 24: 1-6; Coleman Dep. at 167: 11-18, 169: 8-11.)

What happened next is disputed.  The evidence in the record, viewed in the light most favorable to Plaintiff, shows that when she approached Chief Cerski, he screamed "[t]his is my fucking scene.  I don't need you here.  Get out," and then stepped on her foot.  (Pl.'s Aff. ¶¶ 6-7; Coleman Dep. at 164: 21-25, 168: 18-24, 169: 1-20.)  He then "[g]rabbed my shoulder, pushed me back and pulled me forward.  And he said, get off my fucking scene.  I said, then get off my foot."  (Coleman Dep. at 165: 1-3.)  Then, Defendant Cerski did get off Plaintiff's foot and she left.  (*Id.* at 169: 24-25; 171: 1-3.)  The incident left red marks on Plaintiff's arm and neck.  (*See* Domyan Dep. at 17: 12-16, 20: 24-25, 21: 1-15.)  Plaintiff claims she had ripped clothing and bruises in the shape of Defendant Cerski's fingerprints.  (*See* Pl.'s Counter Statement of Facts, Doc. 37 ¶ 27; Pl.'s Ex. F.)  She further claims that she suffered a right upper trapezial and cervical sprain and strain, aggravation to a pre-existing shoulder condition, and pain, which

3

amount to "permanent disability, directly related to the ... injury, which she sustained on September 14, 2003."  (Letter from John A. Kline, Jr., M.D., to Barry H. Dyller, attorney to Ms. Coleman (May 30, 2006) Pl.'s Ex. G, Doc. 37-8, at 1, 4.)

The record, viewed in the light most favorable to the Plaintiff, shows that Defendant Cerski had been sued on three separate occasions for unconstitutional conduct, and that Defendant Ashley Borough knew of this history when it installed Defendant Cerski as the Chief of Police but did not question Cerski about the lawsuits or the underlying incidents.  (Aff. of Arthur Breese, Pl.'s Ex. A, Doc. 37-2; Reply Aff. of Arthur Breese, Pl.'s Ex. B, Doc. 37-3; Oravic Dep. at 19: 14-25, 20-22; Cerski Dep. at 21: 16-25, 22: 1-16.)  The Borough also asked Defendant Cerski to go through anger management training because of an altercation with another employee, but Defendant Cerski did not undergo the counseling.  (Oravic Dep. at 42-46.)

Plaintiff filed suit against Defendant Cerski and Defendant Ashley Borough under 42 U.S.C. § 1983, alleging unreasonable seizure in violation of the Fourth Amendment, denial of due process in violation of the Fourteenth Amendment, and retaliation for exercising her First Amendment right of free speech.  (Compl. Doc. 1.)  Plaintiff also brought state law claims for assault, battery and intentional infliction of emotional distress against Defendant Cerski.  (*Id.*)  This Court dismissed the claim for intentional infliction of emotional distress (Mem. & Order, Doc. 13.) and Defendants presently move for summary judgment on the remaining claims and move to strike portions of Plaintiff's affidavits offered in opposition to their motion for summary judgment.  These motions are fully briefed and ripe for disposition.

4

## LEGAL STANDARD

### I. Motion to Strike Under Rule 56(e)

Defendants move to strike portions of  the affidavits that Plaintiff submitted in opposition to Defendants' summary judgment motion for non-compliance with Rule 56(e) of the Federal Rules of Civil Procedure.  Although Rule 56(e), which sets forth the form that affidavits must take, does not specifically provide for a motion to strike, courts have held that a party wishing to challenge an opponent's affidavits for containing defects under Rule 56(e) should move to strike the affidavits or else waive any objection to the defects.  *See, e.g.*, *In Re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996); *Grine v. Coombs*, 214 F.R.D. 31, 338-39 (W.D. Pa. 2003).

Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  If portions of an affidavit do not meet these standards, it is appropriate for a court to disregard, or strike, those portions from the record for purposes of resolving the summary judgment motion.

### II. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable

substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed

issue of material fact, summary judgment is appropriate only if the factual dispute is not a

genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury

could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is

entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party

may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the Court that "the nonmoving party has failed to make a sufficient

showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party, and the entire record must be examined in the light most

favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59

(3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to

the nonmoving party to either present affirmative evidence supporting its version of the

material facts or to refute the moving party's contention that the facts entitle it to judgment

as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Motion to Strike Plaintiff's Affidavits

Defendants argue that portions of the affidavits Plaintiff submitted in opposition to their motion for summary judgment should be stricken because they are conclusory, speculative and lacking in fact; conflict, without explanation, with Plaintiff's prior deposition testimony; and contain inadmissible hearsay evidence. (Defs.' Br. in Supp. of Mot. to Strike Pl.'s Affs., Doc 41, at 1.) For the following reasons, Defendant's motion to strike will be granted in part and denied in part.

### A. Conclusory or Speculative Statements Will Be Stricken

Federal Rule of Civil Procedure 56(e) requires affidavits to be "made on personal knowledge" and to "show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits relating to a motion for summary judgment that are conclusory and lacking in specific facts fail to satisfy Rule 56(e) and are disregarded. *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1144 (3d Cir. 1990) (citing *Maldonado v.*

7

*Ramirez*, 757 F.2d 48, 51 (3d Cir 1985)).  Pursuant to this rule, Defendants move to strike paragraphs 6-9, 11-15, and 18-22 of Exhibit A, paragraphs 3, 6-8, 10-11, 13-18, 20-22, and 24-29 of Exhibit B, and paragraphs 8-9 of Exhibit E as conclusory and speculative. (Defs.' Br. in Supp. of Mot. to Strike Pl.'s Affs., Doc 41, at 5-6.)

The Court finds that some portions of those paragraphs are conclusory and lacking in specific facts.  In Exhibit A, the following statements will be disregarded: "there was no legitimate reason to stop me" (Breese Aff., Doc. 37-2 ¶ 7.); "I understand that since there was no probable cause or reasonable suspicion to believe I had done anything wrong, Cerski's stop and detention of me was a clear violation of my Fourth Amendment Rights" (*Id.* ¶ 8.); the entirety of paragraphs nine (9) and eleven (11); "Cerski's stop and detention of me thus could not be based on any objectively reasonable belief that my car was the car that had been reported as being driven without authorization" (*Id.* ¶ 13); "... it is abundantly clear that Cerski stopped my vehicle without any objective probable cause or reasonable suspicion" (*Id.* ¶ 15.); "Obviously he could not have had an objectively reasonable belief that I was the runaway fifteen year old Charles Baldrica ..." (*Id.* ¶ 19.); and the entirety of paragraphs 20 (twenty) through twenty-two (22).  The remainder of the statements that Defendants challenge in Exhibit A are not conclusory or lacking in facts, and they are statements about which the affiant affirmatively demonstrated that he is competent to testify, by either citing depositions or explaining how he obtained the information.

In Exhibit B, the following statements will be disregarded: "Therefore, Cerski could not have believed that I was somehow driving the car in question" (Breese Reply Aff.,

Doc. 37-3 ¶ 7.); the first, second, and fourth sentences of paragraph ten (10); the last

sentence of paragraph eleven (11); the entirety of paragraph thirteen (13); the last

sentence of paragraph fourteen (14); the entirety of paragraph fifteen (15) except "there

were no charges brought," and "I obeyed all vehicle, criminal and other laws, and this is

not disputed" (*Id.* ¶ 15); paragraphs sixteen (16) through eighteen (18); the last three (3)

sentences of paragraph twenty (20); the last sentence of paragraph twenty-seven (27);

and paragraph twenty-nine (29).  The remainder of the statements that Defendants

challenge in Exhibit B are not conclusory or lacking in facts, and they are statements

about which the affiant affirmatively demonstrated  that he is competent to testify, by

either citing depositions or explaining how he obtained the information.

In Exhibit E, the entirety of paragraph eight (8) and the last sentence of paragraph

nine (9) will be disregarded as conclusory.  The remainder of the challenged statements

are not conclusory or lacking in facts and they are within the personal knowledge of the

affiant.  (*See* Pl.'s Aff., Doc. 37-6 ¶¶ 8-9.)


**B. Statements Challenged as Conflicting Will Not Be Stricken**

While the Court generally leaves questions of credibility to the fact finder, under

the "sham affidavit" doctrine, it will "disregard an offsetting affidavit that is submitted in

opposition to a motion for summary judgment when the affidavit contradicts the affiant's

prior deposition testimony," in order to prevent the affiant from creating a "sham" dispute

of fact in order to defeat summary judgment.  *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir.

2004).  Disregarding statements in an affidavit is appropriate on "clear and extreme

facts;" that is, when the affidavit is "flatly contradictory" to the prior testimony and offers no explanation for the change in position. *Videon Chevrolet, Inc. v. Gen. Motors Corp.*, 992 F.2d 482, 488 (3d Cir. 1993) (discussing *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3d. Cir 1988)). It is not appropriate when the testimony is only ambiguous. *See Videon*, 992 F.2d at 488.

Defendants move to strike paragraphs four (4), six (6), and nine (9) of Exhibit E as contradictory to Plaintiff's previous deposition testimony.  (Defs.' Br. in Supp. of Mot. to Strike Pl.'s Affs., Doc 41, at 7-10.)  As none of these statements are "flatly contradictory," to prior deposition testimony, none will be stricken.  In paragraph four (4) of her Affidavit, Plaintiff stated that Defendant Cerski was "enraged" and "had a fit at the scene" of the August 2003 fire.  (Pl.'s Aff., Doc. 37-6 ¶ 4.)  In her deposition, when asked whether Chief Cerski was "calm and collective" [*sic*], she responded: "He seemed to be a little upset with me that I just wouldn't open [the intersection] ..."  (Coleman Dep. at 110: 5-6.)  These statements are not identical, but neither are they "flatly contradictory."  Both statements point in the same direction; they differ only in the degree of anger they attribute to Defendant Cerski.  The Third Circuit Court of Appeals has explained that the "sham affidavit" doctrine "has not been applied without regard for the surrounding circumstances" and is intended, at heart, "to screen out sham issues of fact."  *Baer*, 392 F.3d at 624.  Any contradiction in these statements does not create a sham issue of fact, and the statement in the affidavit will not be disregarded.

In paragraph six (6), Plaintiff stated: "Still enraged that I had dared to speak to question his authority and to prohibit him from endangering others, Cerski screamed 'This

is my fucking scene.  I don't need you here.  Get out.'"  (Pl.'s Aff., Doc. 37-6 ¶ 6.)

Defendants argue that this statement is flatly contradictory to her earlier deposition

testimony, in which she responded to the question "Do you know why he [Defendant

Cerski] put his hands on you that day?" by saying "No."  (Coleman Dep. at 226: 21-23.)

The statement in her affidavit suggesting a reason why Defendant Cerski was allegedly

enraged is not an "eleventh hour fabrication," as the Defendants suggest, because the

same language appeared in the Complaint.  (*See* Compl., Doc. 1 ¶ 11.)  And the question

why Defendant became angry is not precisely the same question as why Defendant put

his hands on Plaintiff.  The statement in Plaintiff's affidavit may be speculative, but it is

not "flatly contradictory" to her deposition testimony.

        In paragraph nine (9) of the affidavit, Plaintiff stated that she was "detained" when

Defendant Cerski grabbed her and stepped on her foot.  (Pl.'s Aff., Doc. 37-6 ¶ 9.)

Defendant argues that this contradicts her deposition testimony about the incident.  But

Plaintiff testified in the deposition that Defendant stepped on her foot, grabbed her,

pushed and pulled her, and told her to leave although he was still standing on her foot.

(Coleman Dep. at 164: 23-25, 165: 1-3, 174: 18-23.)  She responded that she would

leave if he got off her foot.  (*Id.*)  He then stopped stepping on her foot and she left.  (*Id.*)

Although there remains a legal question of whether this conduct constitutes detention, the

deposition testimony indicates that while Defendant was stepping on Plaintiff's foot and

grabbing hold of her, she was not free to leave.  This testimony is not contradictory with

her affidavit statement that she was detained.

**C. Statement Challenged as Hearsay Will Not Be Stricken**

An affidavit "shall set forth such facts as would be admissible in evidence." FED. R. CIV. P. 56(e).  Hearsay statements that would be inadmissible in court, therefore, cannot be considered in deciding a motion for summary judgment unless the out-of-court declarant could later present that evidence through direct testimony.  *E.g.*, *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); *Williams v. Borough of West Chester, Pa*, 891 F.2d 458, 466 n.12 (3d Cir 1989).  Defendants argue that the statement of the unidentified dispatcher to Defendant Cerski that Arthur Breese's car was not the one reported as stolen, which is included in paragraph twelve (12) of Mr. Brese's affidavit (Exhibit A) is inadmissible hearsay.  Plaintiff responds that the statement is not hearsay because it is not offered to prove the truth of the matter asserted, but rather to demonstrate that the statement was made, in an affidavit to which Defendant Ashley Borough had access at the time it chose to promote Defendant Cerski to police chief.  The statement is relevant for this purpose because it tends to show that Cerski was promoted despite allegations that he had engaged in unconstitutional behavior by stopping a car without probable cause or reasonable suspicion.  Therefore, as evidence that the city of Ashley was made aware of the allegations of Defendant Cerski's unconstitutional conduct prior to promoting him, the statement in Arthur Breese's affidavit will not be stricken from the record for purposes of deciding the motion for summary judgment.

**II. Fourth Amendment Claim**

Defendants move for summary judgment on Plaintiff's Fourth Amendment claim,
arguing that Plaintiff was never seized.  A person has been seized, within the meaning of
the Fourth Amendment,  "only if, in view of all of the circumstances surrounding the
incident, a reasonable person would have believed that he was not free to leave."  *United
States v. Mendenhall*, 446, U.S. 544, 554 (1980).  "[T]he protection against unreasonable
seizures also extends to 'seizures that involve only a brief detention short of traditional
arrest.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Brignoni-
Ponce*, 422 U.S. 873, 878 (1975)).  The prime example of a seizure outside the context of
arrest is an investigatory stop, as in *Terry v. Ohio.  See* 392 U.S. 1 (1968).  The Third
Circuit Court of Appeals has also held that travel restrictions and compelled court
appearances, when imposed as pretrial conditions, constitute a seizure.  *Gallo v. City of
Philadelphia*, 161 F.3d 217, 222-25 (3d Cir. 1998).  In that case, the Court of Appeals
urged "a broad approach in considering what constitutes a seizure," and stated that "the
limited scope of the seizure here is germane to damages not liability."  *Id.* at 224-25.

Notwithstanding this broad approach, the central question remains whether a
reasonable person in the Plaintiff's position at the accident scene on September 14, 2003
would have felt free to leave.  That question is complicated by the fact that at that scene,
Defendant Cerski was in fact ordering the Plaintiff to leave.  Indeed, in *Brower v. County
of Inyo*, the Supreme Court took pains to emphasize the importance of the state actor's
intention:

> a Fourth Amendment seizure does not occur whenever there
> is a governmentally caused termination of an individual's

13

> freedom of movement (the innocent passerby), nor even
> whenever there is a governmentally caused and
> governmentally *desired* termination of an individual's freedom
> of movement (the fleeing felon), but only when there is a
> governmental termination of freedom of movement *through
> means intentionally applied*.

489 U.S. 593, 596-97 (1989).  In this case, the facts viewed even in the light most

favorable to Plaintiff tend to show that Defendant intended for Plaintiff to leave the scene.

       Two courts within this Circuit have addressed the situation of a defendant who

instructed a plaintiff to leave but was nonetheless accused of seizing him.  In *Lloyd v.

Jefferson*, the facts on a summary judgment motion, viewed in the light most favorable to

the plaintiff, showed that the plaintiff was videotaping the defendant officer as he arrested

her father, and the officer grabbed her arm and told her to leave.  53 F. Supp. 2d 643,

653 (D. Del. 1999).  She repeatedly asked the officer not to touch her and told him he

was hurting her, but he continued to hold her arm for a long period of time, pushed her

around the corner of a building, and detained her.  *Id.*   The court concluded that a

genuine issue of material fact existed regarding whether she was seized.  *Id.*

       Another court from this district reached the opposite conclusion in *Smith v. Dep't of

Gen. Servs.*, where the plaintiff, a police officer, claimed that he was seized by a

supervisor, a sergeant with the police.  No. 1:04 CV 0997, 2005 WL 1563505, at *1 (M.D.

Pa. July 1, 2005).  While the plaintiff was talking with another employee before work, the

defendant "approached Mr. Smith from behind, grabbed his right arm, and stated, 'You've

been up here long enough, come on.'  Mr. Smith went forward and the spun around and

ripped his arm out of Sgt. Shipp's hand. ... Finally, Mr. Smith asserts that Sgt. Shipp

'screamed at [him] like [he] was dog.'"  *Id.* at *1-2 (internal citations omitted; alterations in

14

original).  The court concluded that "[e]ven taking a broad approach of what qualifies as a

seizure, ... [the plaintiff]'s movement was not restricted in such a way that his Fourth

Amendment liberties were violated."  *Id.* at \*9.

Distinguishing *Lloyd*, the court noted that in *Smith*, there was no "control over the

plaintiff's body such that the plaintiff either succumbed to the force or was overpowered

despite efforts to resist."  *Id.* at \*10.  Further, "Mr. Smith broke away from Sgt. Shipp's

grip, and the incident did not escalate further.  Sgt. Shipp did not prevent Mr. Smith from

leaving the area."  *Id.*  The court noted as well that the plaintiff in *Smith* did not submit to

the defendant's show of authority and conceded that he was not detained.  *Id.* at \*9-10.

Finally, the use of physical force was also "qualitatively different:"  In *Lloyd*, the defendant

held the plaintiff's arm "in a tight, wrenching grip for a long period of time," while in Smith,

"Sgt. Shipp grabbed Mr. Smith's arm and shoved him in an incident that 'happened that

quick' and then ended."  *Id.* at \*10.

Likewise, in the instant case, the Plaintiff was able to quickly break away from

Defendant Cerski's hold on her foot by simply asking him to get off her foot, which he

immediately did.  Like in *Smith*, Defendant Cerski did not prevent Plaintiff from leaving

the area; in fact, he wanted her to do so.  Also like in *Smith*, the contact between Plaintiff

and Defendant was very brief.  Defendant pushed Plaintiff back and pulled her forward

"[l]ike a quick jerk," in Plaintiff's words.  (Coleman Dep. at 170: 22-25.)  Even taking all

reasonable inferences from the record in Plaintiff's favor, a reasonable jury could not

conclude that a reasonable person in her position would not feel free to leave. This Court

therefore concludes that no genuine issues of material fact exist and Defendants are

15

entitled to judgment as a matter of law that Plaintiff was not seized and her Fourth

Amendment rights were not violated.

## III. Substantive Due Process

The Supreme Court held in *Graham v. Connor* that claims of excessive force

brought under § 1983 must be "judged by reference to the specific constitutional standard

which governs that right, rather than to some generalized 'excessive force' standard."

490 U.S. 386, 394 (1989).  Usually, the Fourth or Eighth Amendments are the

appropriate sources of the right to be free from excessive force.  In the less common

situation that a plaintiff alleges excessive force was used against her but not in the

context of search, seizure, or imprisonment, the plaintiff's claim is then analyzed under

the substantive component of the Due Process Clause of the Fourteenth Amendment.

*County of Sacramento v. Lewis*, 523 U.S. 833, 843-45 (1998).

That is not the case here.  Plaintiff alleges she was seized and that her seizure

was unreasonable because it involved excessive force.  These allegations are properly

analyzed under the Fourth Amendment, so Defendants' motion for summary judgment on

Plaintiff's substantive due process claim will be granted.

## IV. First Amendment Retaliation

"The First Amendment prohibits government officials from subjecting an individual

to retaliatory actions ... for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

The incidents at issue occurred in the course of Plaintiff's duties as a volunteer Fire

Police member, and Defendants urge the Court to apply the Pickering/Connick/Garcetti

line of cases that address public employees' First Amendment retaliation claims.  That line of cases has been applied to volunteer firefighters before.  *E.g.*, *Rodin v. City of Coral Springs*, 299 Fed. Appx. 849, 851 (11th Cir. 2007).  Under this framework, speech made pursuant to her official duties, like Plaintiff's refusal to open the road, citing orders from her supervisor, is not protected under the First Amendment.  *Garcetti v. Ceballos*, – U.S. – , 126 S. Ct. 1951, 1959-60 (2006).

Plaintiffs, on the other hand, urge the Court to apply general First Amendment retaliation jurisprudence because the public employee cases address discipline and adverse employment actions whereas Plaintiff is challenging a physical assault.  Plaintiff also claims the public employee analysis is inapposite because Defendant Cerski is not her supervisor.  There appears to be a genuine dispute as to whether Defendant Cerski had supervisory power over Plaintiff on September 14, so even if the Court applied the test Defendants urge, summary judgment would not be appropriate.

The First Amendment retaliation claim that this Court will apply has three elements: (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation.  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

Concerning the first element, "except for certain narrow categories deemed unworthy of full First Amendment protection - such as obscenity, 'fighting words' and libel - all speech is protected by the First Amendment."  *Eichenlaub v. Twp. of Indiana*, 385

F.3d 274, 282-83 (3d Cir. 2004).  Further, the Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and includes the ability "to oppose or challenge police action."  *City of Houston, Texas v. Hill*, 482 U.S. 451, 461, 462-63 & n.12 (1987).  There are no disputes of fact concerning what Plaintiff said to Defendant on August 11, 2003.  As this language does not constitute obscenity, libel, fighting words, or other unprotected speech, Defendants are not entitled to judgment as a matter of law that the speech is unprotected under the First Amendment.

Regarding the second element, whether the alleged retaliatory actions were sufficient to deter a person of ordinary firmness from exercising her First Amendment rights, "[t]he effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimus*."  *McKee v. Hart*, 436 F.3d 165 (3d Cir. 2006) (internal quotation marks omitted).  Plaintiff has alleged and put forth some evidence to support her claim that the Defendant physically assaulted her. Other courts have held that threats of physical injury were sufficient to deter a person of ordinary firmness from continuing in protected First Amendment activity.  *See Van Deelen v. Johnson*, — F.3d —, 2007 WL 2309778, at *5 (10th Cir. 2007); *Carrol v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001) (noting, in holding that a person of ordinary firmness would not be deterred, that "[t]here was no physical contact, other than bumping into each other at Hallmark).  Based on the evidence in the record, viewed in the light most favorable to Plaintiff, she suffered bruises and ripped clothing as a result of Defendant Cerski's conduct.  I cannot hold that, as a matter of law, this conduct is *de minimus*.

18

Concerning the last element, causation, disputed factual issues preclude summary judgment.  Plaintiff points in part to the relative proximity in time of the speech on August 11, 2003 and the alleged retaliation on September 14, 2003.  The Court of Appeals for the Third Circuit has noted that "[e]ven if timing alone could ever be sufficient to establish a causal link, ... the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  *Smith v. Estate of Marasco*, 318 F.3d 497 (3d Cir. 2003) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  A period of two (2) days has been found unusually suggestive.  *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).  But in cases with timing similar to that in this case, other evidence of retaliation has come into play.  *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (upholding summary judgment for defendants because a period of "over three weeks" between protected activity and termination, particularly where the plaintiff was nearing the end of her probationary period and had recently had a poor attendance record, was insufficient evidence of retaliation and because plaintiff's other evidence was insufficient to convince a reasonable jury of causation); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000) (finding a period of three to four weeks "suggestive" of retaliation, given that "the entire record" established the inference).

When timing alone is not unusually suggestive, "timing plus other evidence" may show causation.  *Smith*, 318 F.3d at 513.  The other evidence that Plaintiff proffers is a similarity between the incidents, particularly in the words used by Defendant Cerski.  Plaintiff notes that she had challenged Defendant's authority to make decisions at the

19

August fire scene, and at the September accident, Defendant allegedly used violence to assert his authority over that scene.  She also suggests that there was no other reason for Defendant's alleged conduct, that he acted "in response to nothing that happened at the time or scene of the violence."  (Pl.'s Br. in Opp'n to Mot. for Summ. J., Doc. 36, at 20.)  But, as in *Thomas v. Town of Hammonton*, the record here reveals some possible causes for Defendant's alleged conduct other than retaliation.  (*See* Cerski Dep. at 40: 17-23 ("I just wanted her on the other side of the tape so we had everything secured and nothing was bumped.  I mean, like I said, there was body parts.  There was his [the decedent in the automobile accident] clothing.  There was his glasses.  Everything was in different areas.  We didn't want none of that touched.")).

The evidence of similarity between the incidents, however, cannot be said to be insufficient as a matter of law for a reasonable jury to conclude that the first incident caused the second.  The record, thus, reveals genuine disputes as to the factual issue of whether Plaintiff's speech in August caused Defendant's alleged retaliatory conduct in September.  Because of genuine disputes as to issues of material fact, Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim will be denied.

**V. Plaintiff's Claims Against Ashley Borough**

Plaintiff claims, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that the policies or customs of Defendant Ashley Borough caused her to be deprived of constitutional rights.  Specifically, she claims that Ashley was deliberately

indifferent in hiring and supervising Defendant Cerski as police chief.  (Pl.'s Br. in Opp'n

to Mot. for Summ. J., Doc 36, at 25.)  The final decision to hire Defendant Cerski as

police chief was made by the Borough Council, after Mayor Richard Oravic interviewed

him and made a recommendation that the Council hire him as chief.  (Oravic Dep. at 6:

17-24, 7: 4-19.)  A single act of a municipality's legislative body constitutes official policy.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).   Under *Pembaur*, then, the

decision to hire Defendant Cerski constituted official policy and is subject to scrutiny

under *Monell*.

        To establish a policy of inadequate training or supervision, Plaintiff must show that

Ashley Borough was deliberately indifferent to the constitutional rights of persons with

whom Defendant Cerski would interact.  *See City of Canton v. Harris*, 489 U.S. 378, 388

(1989).  A municipality may be found deliberately indifferent if its "policymakers were

aware of, and acquiesced in, a pattern of constitutional violations" by its employees.  *Id.*

at 390; *id.* at 397-98 (O'Connor, J., concurring in part and dissenting in part).  This is the

essence of Plaintiff's claim against Ashley Borough.

        The Supreme Court has cautioned that "[w]here a plaintiff claims that the

municipality has not directly inflicted an injury, but nonetheless has caused an employee

to do so, rigorous standards of culpability and causation must be applied to ensure that

the municipality is not held liable solely for the actions of its employee." *Bd. of County

Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  It further stated that "deliberate

indifference is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Id.* at 410.  To that end,

"culpability must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412.

Plaintiff's surviving claims sound in unreasonable force and retaliation for exercise of First Amendment rights.  One of the previous lawsuits against Defendant Cerski was for racial discrimination contributing to an unjustified vehicle stop.  (See Breese Aff., Doc. 37-2; Breese Reply Aff., Doc. 37-3.)  Another "had to do with handcuffs too tight," and in the third, Defendant Cerski was sued for not allowing an intoxicated person in custody to have his medication until the morning.  (Cerski Dep. at 21: 21-25, 22: 1-5.)  The only one of these prior complaints of unconstitutional conduct against Defendant Cerski that is relevant to "the *particular* injury suffered by" the Plaintiff here is the suit that alleged unreasonable force in the use of handcuffs.  None of the suits would put the municipality on notice of any retaliatory behavior by Defendant Cerski, and one complaint of unreasonable force is not a "pattern of constitutional violations" in which the Borough could acquiesce.  *See City of Canton*, 498 U.S. at 397-98 (O'Connor, J., concurring in part and dissenting in part).  In light of the "stringent standard of fault" required to find deliberate indifference, *Brown*, 520 U.S. at 405, this Court concludes that plaintiff has not proffered sufficient evidence to support a finding that Ashley Borough acted with deliberate indifference to her constitutional rights.  No genuine disputes about the factual basis of the previous claims against Defendant Cerski exist, and viewing all evidence in the record in the light most favorable to Plaintiff, I find that Defendant Ashley Borough is

entitled to judgment as a matter of law.  Therefore, Defendants' motion for summary

judgment on all claims against Ashley Borough in Count II will be granted.


**VI. Plaintiff's State Law Claims**

Finally, Defendants move for summary judgment on Plaintiff's state law claims,

arguing only that if the federal claims are resolved in their favor, this Court no longer has

jurisdiction over the state law claims.  Because a claim based in federal law remains

against Defendant Cerski, the motion for summary judgment on the state law claims will

be denied.


**CONCLUSION**

Because some of the statements in Plaintiff's affidavits that Defendants challenge

in their motion to strike are speculative and conclusory but other challenged statements

do comply with Federal Rule of Civil Procedure 56(e), the Court has disregarded only the

speculative or conclusory statements from those affidavits in making its decision on the

present motion for summary judgment.  The Defendants' motion to strike will therefore be

granted in part and denied in part.

Because even viewing the record in the light most favorable to Plaintiff, she was

not seized, the Court will grant Defendants' motion for summary judgment as to Plaintiff's

Fourth Amendment claim in Count I.  Because the substantive component of the Due

Process Clause of the Fourteenth Amendment is not the appropriate avenue through

which to pursue Plaintiff's claim for unreasonable force, the Court will grant Defendants'

motion for summary judgment on the Due Process claim in Count I.  Because genuine issues of material fact exist regarding the claim that Defendant Cerski retaliated against Plaintiff for exercise of her First Amendment rights, the Court will deny his motion for summary judgment on the First Amendment claim in Count I.  Because Plaintiff has proffered insufficient evidence for a reasonable jury to conclude that Ashley Borough acted with deliberate indifference to her constitutional rights, Defendants' motion for summary judgment on all claims against Ashley Borough in Count II will be granted.  And because some federal claims survive this motion for summary judgment and this Court retains jurisdiction over the state law claims, Defendants' motion for summary judgment on the assault and battery claims against Defendant Cerski in Counts III and IV will be denied.

The remaining claims in this case are the First Amendment, state law assault, and state law battery claims against Defendant Cerski.

An appropriate order follows.

October 4, 2007                                          /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SARAH COLEMAN, a/k/a
SALLY COLEMAN,

     Plaintiff,                      CIVIL ACTION No. 3:04-cv-1423

          v.                        (JUDGE CAPUTO)

DAVID CERSKI and ASHLEY
BOROUGH,

      Defendants.

## <u>ORDER</u>

Now, this __4th__ day of October, 2007, it is **HEREBY ORDERED** that Defendants'

motion to strike and motion for summary judgment are **GRANTED** in part and **DENIED** in

part, as follows:

(1) Defendants' motion to strike certain statements from Plaintiff's affidavits in

opposition to this motion will is hereby **GRANTED** as to those statements identified

in the preceding Memorandum Opinion as speculative or conclusory.  Defendants'

motion to strike is hereby **DENIED** as to all other statements.

(2) In Count I, Defendants' motion for summary judgment on Plaintiff's Fourth

Amendment and substantive due process claims against Defendant Cerski is

hereby **GRANTED**.  Their motion for summary judgment on Plaintiff's First

Amendment claim against Defendant Cerski is hereby **DENIED**.

(3) In Count II, Defendants' motion for summary judgment on all claims against

Ashley Borough is hereby **GRANTED**.

(4) In Counts III and IV, Defendants' motion for summary judgment on Plaintiff's state law claims against Defendant Cerski is hereby **DENIED**.


_____       /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge